UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AUTODESK, INC., a Delaware corporation,<br><br>                  Plaintiff,<br><br>        v.<br><br>GUILLERMO FLORES, an individual;<br>GREG FLOWERS, an individual;<br>GREGORIO FLORES, an individual; and<br>DOES 1 through 10, inclusive,<br><br>                  Defendants. | Case No.: 10-CV-01917-LHK<br><br>ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT |

Plaintiff Autodesk, Inc., moves for default judgment against Defendants Guillermo Flores, Greg Flowers, and Gregorio Flores. Although Plaintiff initially had some contact with Defendants regarding possible settlement of the case, Defendants did not file an Answer or otherwise appear in this case. The Court has considered the motion and declarations submitted by Plaintiff. Pursuant to Civil Local Rule 7-1(b), the Court finds that this motion is appropriate for determination without oral argument and vacates the motion hearing scheduled for February 3, 2011. For the reasons set forth below, the Court grants Plaintiff's motion for default judgment, permanent injunction, statutory damages, and post-judgment interest. The Court denies Plaintiff's request for costs and attorney's fees without prejudice.

1

Case No.: 10-CV-01917-LHK
ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT

**I. Background**

Plaintiff Autodesk, Inc., develops, markets, distributes, and licenses a variety of copyrighted software products, including computer aided design programs. First Amended Compl. ("FAC") ¶¶ 11, 16-17. Its copyrights are registered with the Copyright Office and cover products including AutoCAD® 2009 software and AutoCAD® 2010 software, as well as numerous other products. FAC ¶ 16. Autodesk also owns trademarks associated with its products, including the trademarks AutoCAD® and Autodesk®, which are registered with the United States Patent and Trademark Office. FAC ¶19.

According to the memorandum and declarations submitted in support of its motion for default judgment, Autodesk began investigating the conduct underlying this action in October 2009, when it received an email notifying it that advertisements offering illegal copies of Autodesk products had been posted on the website www.craigslist.org ("Craigslist"). Decl. of Evelyn R. LaHaie ("LaHaie Decl.") ¶ 9 & Ex. A. The initial advertisement was titled "AutoCAD 2009 AutoCAD 2010" and indicated that the seller was located in San Diego, California. The advertisement offered to sell copies of the two Autodesk products and stated "you're getting a $4,000.00 program for 70 bucks.Please [sic] save the questions like, does it come with the manual and box, etc. It's the full program, it works. You save tons of money." Decl. of Eric A. Handler ("Handler Decl.") ¶ 2 & Ex. A. At the time, the suggested retail price for the Autodesk products was $3,995. LaHaie Decl. ¶ 4. The ad also instructed interested buyers to "Call, text, or email" and provided a telephone number. Handler Decl. ¶ 2 & Ex. A. The person who emailed Autodesk about the ad stated that when he contacted the seller and asked if the products were original, the seller responded with the following email:

> They're backed up from an original bro. I sell several a week and have no complaints about me on craigslist or anything negative for that matter. I can help install prior to payment to show you it works just fine. If not no problem however you won't find this 4,000 dollar program for such a good price. Take care.
>
> - Memo

LaHaie Decl. Ex. A.

Subsequent investigation indicated that Defendant Gregorio Flores, aka Greg Flowers,[1] had posted numerous ads on Craigslist offering various versions of several different Autodesk products, including AutoCAD® software, AutoCAD® Civil 3D® software, Autodesk® Revit® software, and Autodesk® 3ds Max® software. Handler Decl., ¶¶ 6, 7, 10-13, Ex. D.  Autodesk's investigator purchased one of the products advertised by Defendants on Craigslist and received by mail a recordable digital videodisc ("DVD+R") on which was hand-written "AUTOCAD 2010." *Id.* at ¶ 5 & Ex. E.  Autodesk subjected the disc to forensic analysis and determined that it contained an unauthorized copy of AutoCAD® 2010 software, as well as software used to circumvent the copyright protection measures built into the AutoCAD® 2010 software.  LaHaie Decl. Ex. C.  The disc also contained instructions for installing the AutoCAD® software in conjunction with the circumvention software so that the AutoCAD® software could be run without an activation code from Autodesk. *Id.*

Based on the information from its investigations, Autodesk filed the instant action on May 4, 2010, against Defendants Greg Flowers and Gregorio Flores, asserting the following four claims: (1) copyright infringement in violation of 17 U.S.C. § 501; (2) violation of the circumvention technology provisions of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201(a), (b); (3) trademark infringement and counterfeiting, in violation of 15 U.S.C. §§ 1114(1) and 1125(a); and (4) false designation of origin, in violation of 15 U.S.C. § 1125(a).  Further investigation revealed that Guillermo Flores was the owner of the telephone number listed on the Craigslist ads and had lived at the return address listed on the package received by Autodesk's investigator.  Accordingly, on May 12, 2010, Autodesk filed a First Amended Complaint adding Guillermo as a defendant.  Handler Decl. ¶ 7.  By June 18, 2010, Autodesk had served all Defendants with the First Amended Complaint.  *See* Certificate of Service, ECF Nos. 12-14.  Around the same time, Autodesk also contacted Defendants to determine whether litigation might be avoided. *Id.* at ¶ 9.  In an initial phone conference, Autodesk was able to confirm that Defendants used the names, addresses, and phone number associated with the ads, and Defendants gave Autodesk access to one PayPal

---

[1] It appears that Gregorio Flores uses the name "Greg Flowers" as an alias and that Gregorio Flores and Greg Flowers are in fact one person.  *See* Handler Decl. ¶ 10.

3

Case No.: 10-CV-01917-LHK
ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT

account apparently owned by Gregorio and used by Guillermo to conduct business. *Id.* at ¶ 13. However, out-of-court talks eventually broke down, and Autodesk gave Defendants notice that it would seek entry of default if Defendants did not file and serve responses to the First Amended Complaint by August 23, 2010. *Id.* at 23. Defendants failed to respond to the Autodesk's pleadings, and on September 2, 2010, the clerk entered default. Autodesk now moves for entry of default judgment and issuance of a permanent injunction against all Defendants. Autodesk also seeks an award of attorney's fees incurred in this action.

## II. Motion for Default Judgment

### A. Default Judgment

Under Federal Rule of Civil Procedure 55(b)(2), a party may apply to the court for entry of judgment by default. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising discretion to enter default judgment, courts typically consider the following factors: (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

#### 1. Merits of Plaintiff's Claims and Sufficiency of the Complaint

After entry of default, "well-pled allegations in the complaint regarding liability are deemed true." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The Court will therefore consider the merits of Autodesk's claims and the sufficiency of its pleadings together. In addition to the allegations in its FAC, Autodesk has also submitted extensive documentation of Defendants' advertisements on Craiglist and on-line transactions via PayPal, as well as detailed declarations documenting Autodesk's investigation of Defendants' activities. The Court will also consider these submissions in evaluating the merits of Autodesks's substantive claims.

#### a. Copyright Infringement

Autodesk's first cause of action asserts copyright infringement in violation of 17 U.S.C. § 501. The Copyright Act grants the copyright owner the exclusive right to reproduce a copyrighted work, to distribute copies of the work, and to authorize reproduction or distribution. *See* 17 U.S.C. § 106(1)-(3). To establish copyright infringement, a plaintiff must prove: (1) ownership of a valid copyright, and (2) that the defendant violated at least one exclusive right granted to plaintiff under 17 U.S.C. § 106. *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Autodesk has clearly met this standard. As to the first element, the FAC alleges that Autodesk owns copyrights in at least fourteen different Autodesk products, including the AutoCAD® 2010 and AutoCAD® 2009 software explicitly offered in Defendants' Craiglist advertisements. *See* FAC ¶ 17 & Ex. A; Handler Decl. Exs. A-D. These copyrights are registered with the Copyright Office, and Autodesk has provided a list of the registration numbers, registration dates, and product titles as an exhibit to the FAC. FAC Ex. A. As to the second element of infringement, Autodesk alleges that Defendants copied and distributed copyrighted Autodesk products without authorization. FAC ¶ 22. Autodesk has also submitted declarations stating that forensic analysis of a product purchased from Defendants included an unauthorized copy of AutoCAD® 2010 software. LaHaie Decl. ¶ 11 & Ex. C. These allegations are sufficient to establish a claim for copyright infringement pursuant to 17 U.S.C. § 501.

#### b. Circumvention of Technological Measures

Autodesk's second cause of action alleges that Defendants sold, distributed, or trafficked in circumvention technology, in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §§ 1201(a)-(b).[2] FAC ¶¶ 22, 29-31. The DCMA prohibits the sale or trafficking in "any

---

[2] The FAC does not identify which subsections within §§ 1201(a) and (b) Defendants allegedly violated. In its motion, however, Autodesk indicates that it intended to allege violations of 17 U.S.C. §§ 1201(a)(1)(A), (a)(2), and (b)(1). The Federal Circuit has described the differences between these sections as follows: "Defendants who traffic in devices that circumvent *access* controls in ways that facilitate infringement may be subject to liability under § 1201(a)(2). Defendants who *use* such devices may be subject to liability under § 1201(a)(1) whether they infringe or not. Because all defendants who traffic in devices that circumvent *rights* controls necessarily facilitate infringement, they may be subject to liability under § 1201(b)." *Chamberlain Group*, 381 F.3d at 1195 (emphasis added). The FAC is focused on allegations that Defendants sold or trafficked in circumvention technology and does not allege that they actually used the technology themselves. Thus, Autodesk does not appear to have pled a claim under

5

Case No.: 10-CV-01917-LHK
ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT

technology, product, service, device, component, or part thereof" that is primarily designed "for the purpose of circumventing a technological measure that effectively controls access to a work protected under [federal copyright laws]." 17 U.S.C. § 1201(a)(2). The Federal Circuit has stated that a plaintiff alleging a violation of § 1201(a)(2) must prove:

> (1) ownership of a valid *copyright* on a work, (2) effectively controlled by a *technological measure*, which has been circumvented, (3) that third parties can now *access* (4) *without authorization*, in a manner that (5) infringes or facilitates infringing a right *protected* by the Copyright Act, because of a product that (6) the defendant either (i) *designed or produced* primarily for circumvention; (ii) made available despite *only limited commercial significance* other than circumvention; or (iii) *marketed* for use in circumvention of the controlling technological measure.

*Chamberlain Group, Inc. v. Skylink Technologies, Inc.*, 381 F.3d 1178, 1203 (Fed. Cir. 2004). The DCMA provides that a technological measure "effectively controls access to a work" if the measure, in the ordinary course of its operation, requires the application of information, with the authority of the copyright owner, to gain access to the work. *Id.* § 1201(a)(3)(B). The DMCA defines "circumvent a technological measure" to include avoiding, bypassing, removing, deactivating, or impairing a technological measure, without the authority of the copyright owner. 17 U.S.C. § 1201(a)(3)(A).

Here, Autodesk alleges that Defendants trafficked in technology primarily designed to circumvent a technological measure that effectively controls access to one or more of Autodesk's software products. FAC ¶¶ 14(b), 22(b)-(c). Autodesk also provides declarations establishing that the AutoCAD® 2010 software includes technology that controls access to the copyrighted work by requiring users to input an activation code provided by Autodesk. *See* LaHaie Decl. ¶ 12. Autodesk claims, moreover, that the disc its investigator purchased from Defendants contained software and instructions designed to permit access to the AutoCAD® 2010 software without an activation code, thereby bypassing Autodesk's access controls. *Id.* at ¶ 11-12 & Ex. C. These

---

§ 1201(a)(1)(A). In addition, although the difference between § 1201(a)(2) and (b)(1) is not entirely clear, Autodesk's claim appears to better correspond to § 1201(a)(2), which bars circumvention of measures that require authorization to access a work, than to § 1201(b), which bars circumvention of measures that prevent the exercise of rights belonging to the copyright owner. Because Autodesk seeks damages only for a single violation of § 1201, the Court will consider its claim solely under § 1201(a)(2).

6
Case No.: 10-CV-01917-LHK
ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT

1    allegations are sufficient to establish that Defendants trafficked in technology primarily designed to

2    circumvent the technological measures that control access to Autodesk's copyrighted AutoCAD®

3    2010 software. Accordingly, Autodesk has established a claim for violations of the DCMA.

### c. Trademark Infringement and Counterfeiting

5    Autodesk's third cause of action alleges trademark infringement and counterfeiting under

6    Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a). To prove

7    trademark infringement, Autodesk must show: (1) it has a valid, protectable trademark; (2)

8    Defendants have used in commerce without authorization a copy, reproduction, counterfeit or

9    colorable imitation of Autodesk's mark in connection with the sale, distribution, or advertising of

10   goods and services; and (3) Defendants' use of the mark is likely to cause confusion. *See Applied

11   Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007); *Brookfield Communications, Inc.

12   v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046 & n.6 (9th Cir. 1999); 15 U.S.C.

13   §§ 1114(1), 1125(a). Registration of a mark on the principal register in the Patent and Trademark

14   Office is prima facie evidence of the validity of the mark. *See Applied Info.*, 511 F.3d at 970.

15   Autodesk alleges that it owns trademarks registered with the Patent and Trademark Office,

16   including the AutoCAD® and Autodesk® marks, and Autodesk lists its trademarks, registration

17   numbers, and registration date in an exhibit to the FAC. FAC ¶ 19 & Ex. B. The FAC also alleges

18   that Defendants used Autodesk's trademarks, without authorization, in Internet commerce and on

19   unauthorized copies of Autodesk products, and that such use has caused consumer confusion as to

20   the source, quality, or nature of the unauthorized and unlicensed goods sold by Defendants. FAC

21   ¶¶ 34-39. In support of these allegations, Autodesk has submitted copies of Craigslist ads allegedly

22   posted by Defendants that offer "AutoCAD" and "Autodesk" software. Handler Decl. Exs. B, D.

23   These ads also include claims that the product offered is "the full suite, not a trial or demo," a "full

24   version program," and "the full suite, fully activated license guaranteed." *Id.* This use of

25   Autodesk's marks could certainly cause confusion and lead consumers to believe that they are

26   purchasing software authorized and licensed by Autodesk, when in fact they are not. Accordingly,

27   the Court agrees that Autodesk has sufficiently established a claim for trademark infringement.

**d. False Designation of Origin and False Descriptions**

Autodesk's fourth and final cause of action alleges false designation of origin and false descriptions in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Section 43(a) prohibits the use in commerce of

> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

15 U.S.C. § 1125(a). Autodesk alleges that Defendants used the Autodesk trademark to falsely designate the origin of their products and made misleading descriptions of fact concerning those products. FAC ¶ 44. Autodesk further alleges that these false designations and descriptions have caused consumer confusion regarding the affiliation of Autodesk with Defendants' products and the approval by Autodesk of Defendants' products. FAC ¶ 45. In addition, as discussed above, Autodesk has submitted copies of advertisements in which Defendants used the Autodesk trademark and suggest that they are selling fully licensed versions of Autodesk software. Handler Decl. Exs. B, D. This false description of Defendants' products and use of Autodesk's trademarks could lead consumers to believe that Defendants are offering products affiliated with and originated by Autodesk. Thus, Autodesk has sufficiently established a claim for false designation of origin and false description.

**2.    Remaining *Eitel* Factors**

Based on the above analysis, the Court concludes that Autodesk's well-pleaded complaint and the merits of its substantive claims favor entry of default judgment. The Court also finds that the remaining *Eitel* factors support Autodesk's motion. First, Autodesk will be prejudiced if default judgment is not entered. Because Defendants have refused to respond to the FAC or

otherwise take part in the litigation, Autodesk will be denied the right to adjudicate its claims and obtain relief if default judgment is not granted.  Second, as to the sum of money at stake, Autodesk seeks $102,500 in statutory damages.  Although entry of default judgment may not be appropriate where a large sum of money is at stake, *see Eitel v. McCool*, 782 F.2d at 1472, here the damages sought are statutory, and the amount is left to the Court's discretion.  Moreover, Autodesk seeks damages based only on two instances of copyright and trademark infringement and one instance of trafficking in circumvention technology, even though there is evidence to suggest that Defendants' infringing activities may have been more extensive.  Third, given Defendants' admissions to Autodesk and the evidence submitted with Autodesk's motion, it seems unlikely that the case would be subject to serious disputes concerning the material facts.  Fourth, it does not appear that Defendants' default was due to excusable neglect.  Autodesk had two telephone conferences with Defendants, served them with all litigation documents, and gave notice that Autodesk would seek default judgment if Defendants failed to respond to the First Amended Complaint by a specified date.  Handler Decl. ¶¶ 20-22.  Defendants thus had notice and plenty of opportunity to appear in this litigation before Autodesk moved for default judgment.  Finally, although federal policy favors decisions on the merits, it does not appear that resolution on the merits will be possible in this case.  Based on this analysis of the *Eitel* factors, the Court concludes that entry of default judgment is appropriate and GRANTS the motion for default judgment.

### B. Determination of Relief

In its motion for default judgment, Autodesk seeks a permanent injunction and statutory damages in the amount of $102,500 based on two instances of copyright infringement, two instances of trademark infringement, and one instance of trafficking in circumvention technology. Autodesk also seeks an award of costs, reasonable attorney's fees, and post-judgment interest.  The Court will consider each form of requested relief in turn.

#### 1. Injunctive Relief

Autodesk seeks issuance of a permanent injunction under the Copyright Act, 17 U.S.C. § 502(a), the Digital Millennium Copyright Act, 17 U.S.C. § 1203(b)(1), and the Lanham Act, 15 U.S.C. §§ 1114(2) and 1116(a).  These statutes permit the issuance of a permanent injunction to

9

Case No.: 10-CV-01917-LHK
ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT

1    prevent future infringement.  A plaintiff seeking a permanent injunction must demonstrate: " (1)

2    that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary

3    damages, are inadequate to compensate for that injury; (3) that, considering the balance of

4    hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the

5    public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange*,

6    L.L.C., 547 U.S. 388, 391 (2006).

7    In this case, each of these four factors supports granting a permanent injunction.  With

8    regard to the first two factors, copyright and trademark infringement are generally presumed to

9    give rise to irreparable harm for which there is no adequate remedy at law.  *Marlyn Nutraceuticals,*

10   *Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009) ("[i]n a trademark

11   infringement claim, irreparable injury may be presumed from a showing of likelihood of success

12   on the merits") (quotation marks and citation omitted); *Cadence Design Systems, Inc. v. Avant!*

13   *Corp.*, 125 F.3d 824, 826-27 (9th Cir. 1997) ("a presumption of irreparable injury arises if the

14   plaintiff is able to show a likelihood of success on the merits of its copyright infringement claim");

15   *Century 21 Real Estate Corp. v. Sanlin*, 846 F.2d 1175, 1180-81 (9th Cir. 1988) ("Injunctive relief

16   is the remedy of choice for trademark and unfair competition cases, since there is no adequate

17   remedy at law for the injury caused by a defendant's continuing infringement.").   As to the third

18   factor, while Autodesk will be harmed by continued infringement, the Court perceives no potential

19   harm to Defendants as an injunction would simply require them to comply with the Copyright and

20   Lanham Acts.  As to the fourth factor, a permanent injunction would likely serve the public interest

21   by reducing consumer confusion, *see Internet Specialties West, Inc. v. Milon-DiGiorgio*

22   *Enterprises, Inc.*, 559 F.3d 985, 993 (9th Cir. 2009), and by "upholding" the rights that "Congress

23   has elected to grant . . . to the owner of a copyright in a protected work." *Apple Computer, Inc. v.*

24   *Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) (quoting *Klitzner Industries, Inc. v.*

25   *H. K. James & Co., Inc.*, 535 F. Supp. 1249, 1259-60 (D. Pa. 1982)).

26   The Court notes, in addition, that Autodesk has submitted evidence indicating that

27   Defendants posted numerous advertisements during 2009 and 2010 offering products that infringed

28   Autodesks copyrights and trademarks.  Defendants' unwillingness to appear in this matter has

given the Court no assurance that they will cease their infringing activities and makes it difficult for Autodesk to prevent further infringement. Based on these facts and the analysis above, the court finds that Autodesk is entitled to a permanent injunction.

### 2. Statutory Damages

The Copyright Act authorizes statutory damages of up to $30,000 per infringed work. 17 U.S.C. § 504(c)(1). In cases where the copyright owner sustains the burden of proving that the infringement was committed willfully, the Copyright Act authorizes enhanced statutory damages of up to $150,000 per infringed work. *Id.* § 504(c)(2). The Lanham Act, similarly, authorizes statutory damages of up to $200,000 per mark, as well as enhanced statutory damages of up to $2 million per mark for willful infringement. 15 U.S.C. § 1117(c). In addition, under the DMCA, a copyright owner can receive an award of up to $2,500 in statutory damages for each act of circumvention or for each circumventing product. 17 U.S.C. § 1203(c)(3). Here, Autodesk argues that Defendants acted willfully and requests the following statutory damages: enhanced statutory damages of $30,000 each for infringement of the copyrighted AutoCAD® 2009 and AutoCAD® 2010 software ($60,000 total); enhanced statutory damages of $20,000 each for infringement of the AutoCAD® and Autodesk® trademarks ($40,000 total); and the statutory maximum of $2,500 for one instance of trafficking in circumvention technology, as documented by Autodesk's investigator. In the aggregate, Autodesk seeks $102,500 in statutory damages.

As a threshold matter, the Court agrees that there is sufficient evidence to support a finding that Defendants' conduct was willful. Under the Copyright and Lanham Acts, willfulness may be found where the defendant's infringing actions are undertaken either with knowledge that the conduct constitutes infringement or with reckless disregard for the copyright or trademark owner's rights. *See In re Barboza*, 545 F.3d 702, 707-08 (9th Cir. 2008) (discussing willfulness standard in copyright cases); *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003) (noting that "courts faced with determining statutory damages under the [Lanham] Act have analogized to the body of case law interpreting a similar provision in the Copyright Act"). Willfulness may also be inferred or admitted based on a defendant's failure to defend. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) ("all factual allegations in

11

the complaint are deemed true, including the allegation of [defendant's] willful infringement"); *Philip Morris*, 219 F.R.D. at 500 (accepting allegations of willfulness as true upon default).

In this case, Autodesk has both alleged willful infringement, FAC ¶¶ 23, 25, 29, 33, and submitted evidence that strongly supports a finding of willfulness. As noted above, Defendants posted numerous ads that used Autodesk's registered trademarks, without authorization, to sell pirated copies of Autodesk's copyrighted software. Many of these ads contained a "disclaimer" stating that "you're getting a $4,000.00 program for 70 bucks.Please save the questions like, does it come with the manual and box, etc." Handler Decl. Ex. A, B. Other ads state, "if it's cardboard and a piece of paper you want, you can pay over 1-2,000 dollars." *Id.* Ex. C. This language suggests that Defendants knew that they were offering unauthorized versions of Autodesk's software and were at least reckless in their disregard for Autodesk's rights in its copyrighted software and registered trademarks. Moreover, Defendants' products contained software and instructions specifically designed to circumvent the access protections on Autodesk's copyrighted works. LaHaie Decl. ¶¶ 11-12, Ex. C. In their advertisements, Defendants offered to install their products themselves, suggesting that they were familiar with the installation process used to override Autodesk's access controls. *See* Handler Decl. Ex. D ("I can install prior to payment to secure functionality."). Defendants also referred to themselves as the "[l]ongest trusted program provider on Craigslist," Handler Decl. Ex. B, D, indicating that the sale to Autodesk's investigator was not an isolated, innocent instance of infringement, but one of many unauthorized sales. These facts strongly suggest that Defendants knew that their conduct was unlawful and support a finding of willfulness.

Such a finding does not end the inquiry, however, for the district court is given broad discretion to determine the amount of statutory damages. *Peer Intern. Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990). In awarding statutory damages, courts in this District have considered whether the amount of damages requested bears a "plausible relationship" to the plaintiff's actual damages. *See Adobe Systems, Inc. v. Tilley*, No. C 09-1085, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010) (citing *Microsoft Corp. v. Ricketts*, No. C 06-06712, 2007 WL 1520965, at *4 (N.D. Cal. May 24, 2007). These courts have reasoned that while the plaintiff in a

1    copyright or trademark action is entitled to damages that will serve as a deterrent, the plaintiff is

2    not entitled to a windfall. *Tilley*, 2010 WL 309249, at *5. Thus, in cases where the plaintiff has

3    identified only a few sales of infringing products, awards have ranged from $1,000 to $10,000 for

4    each copyright or trademark infringed. *See id.* at *6 (awarding $10,000 per infringement based on

5    evidence of one sale); *Adobe Systems Inc. v. Brooks*, No. 5:08-cv-04044, 2009 WL 593343, at *4

6    (N.D. Cal. Mar. 5, 2009) (awarding $10,000 per infringement based upon one infringing sale and

7    evidence of possible additional infringement); *Ricketts*, 2007 WL 1520965, at *4 (awarding $1,000

8    per infringed trademark and $1,500 per infringed copyright). In contrast, in cases where the

9    plaintiff identifies numerous infringing transactions and evidence points to ongoing sales of

10   infringing products, courts have awarded up to $50,000 per infringed work or mark. *See Adobe*

11   *Systems, Inc. v. Taveira*, No. C 08-2436, 2009 WL 506861, at *6 (N.D. Cal. Feb. 27, 2009)

12   (awarding $50,000 per mark where defendant sold at least 20 copies of counterfeit software and

13   plaintiff alleged that over 1,000 unauthorized copies were sold).

14         In this case, Defendants have referred to themselves in advertisements as the "[l]ongest

15   trusted program provider on Craigslist," Handler Decl. Ex. B, D. In response to an inquiry about

16   the AutoCAD software, Defendants wrote, "I sell several a week." LaHaie Decl. Ex. B. This

17   strongly suggests that Defendants' conduct is not limited to a few isolated sales of unauthorized

18   software.[3] Additionally, the identifiable transactions in the PayPal records submitted by Autodesk

19   indicate that Defendants made at least three sales of Autodesk software in 2009. Handler Decl. Ex.

20   E, at 6, 14. Moreover, as Autodesk points out, although Autodesk seeks damages based only on

21   two copyrighted works and two trademarks, there is evidence that Defendants sold a wider range of

22   Autodesk products and used several other Autodesk trademarks in its advertisements. *See* Handler

23   Decl. Ex. D.

24         Based on these facts, this case appears to fall somewhere between *Taveira*, which awarded

25   $50,000 per infringed work based on evidence of 20 sales and allegations of more than 1,000

---

[3] Defendants' advertisements also offer a wide range of other software products, including Adobe, Apple, and Microsoft Office products, for prices ranging from about $80 to $120. Handler Decl. Ex. D. The PayPal records submitted by Autodesk show more than 30 sales of Adobe products and several sales of Microsoft Office products. *Id.* at Ex. E.

13
Case No.: 10-CV-01917-LHK
ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT

unauthorized transactions, and *Brooks*, which awarded $10,000 per infringed work based on one infringing sale and evidence suggesting additional infringement. As to the copyright claims, the Court agrees that an award of $60,000 under the Copyright Act ($30,000 per infringed work) and the full $2,500 permitted under the DCMA is appropriate. By selling unauthorized copies of Autodesk software equipped with software and instructions specifically designed to circumvent access control, Defendants have essentially profited from the theft of Autodesk's intellectual property. This conduct is egregious and forms the core of this action, and a damage award of $30,000 per work under the Copyright Act is in line with other awards in this District. The Court finds, however, that the damages sought under the Lanham Act are somewhat duplicative of the copyright damages. Accordingly, the Court will reduce the award of damages under the Lanham Act to $10,000 for each infringed mark, for a total of $20,000. This amounts to a total award of $82,500.

### 3. Attorney's Fees

Both the Copyright Act and the DCMA permit a court to award full costs and reasonable attorney's fees to a prevailing party. 17 U.S.C. §§ 505, 1203(b)(4)-(5). An award of reasonable attorney's fees and costs is also expressly provided for in "exceptional cases" of trademark infringement. 15 U.S.C. § 1117(a). "While the term 'exceptional' is not defined in the statute, attorneys' fees are available in infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir.2002); *see also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (awarding attorney's fees under Lanham Act where defendant admitted allegations of willfulness by defaulting). Because the Court has found that Defendants acted willfully in infringing Autodesk's copyrights and trademarks, an award of costs and reasonable attorney's fees under the Copyright Act, the DCMA, and the Lanham Act is appropriate.

In support of its request for attorney's fees, Autodesk submitted a declaration describing the experience of the attorneys involved in this litigation, their ordinary billing rates, and the services they provided to Autodesk during the course of this action. *See* Decl. of Julie E. Hofer in Supp. of Mot. for Entry of Default Judgment ("Hofer Decl."). The declaration indicates that the attorneys

1    created detailed billing entries for each task performed and that Ms. Hofer reviewed these entries,

2    deleting some and reducing others in order to avoid redundancies in the fees sought. Hofer Decl.

3    ¶¶ 7-12. However, Autodesk has not submitted billing records or a table of costs for the Court's

4    review. Without this information, the Court cannot determine whether the fees and costs requested

5    are reasonable. *See Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000) (requiring district court

6    to analyze time records and make specific findings at to the reasonableness of the rates and hours

7    awarded); *Zynga Game Network Inc. v. Erkan*, No. 09-3264, at *2, 2010 WL 3463630 (N.D. Cal.

8    Aug. 31, 2010) (denying motion for attorney's fees where plaintiff failed to attach billing records).

9    Accordingly, the Court DENIES Autodesk's request for costs and reasonable attorney's fees

10   without prejudice. Autodesk shall file a revised motion for attorney's fees within 30 days of this

11   order.

### 4.     Post-Judgment Interest

Finally, Autodesk also seeks post-judgment interest on the aggregate sum of statutory damages, attorney's fees, and costs awarded. Pursuant to 28 U.S.C. 1961(a), interest "shall be allowed on any money judgment in a civil case recovered in a district court." Accordingly, Autodesk shall be awarded post-judgment interest, which will be calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id.*

### III. Conclusion

For the foregoing reasons, the Court GRANTS Autodesk's motion for entry of default judgment, issuance of a permanent injunction, statutory damages, and post-judgment interest. The Court DENIES the request for attorney's fees without prejudice. Autodesk may file a renewed motion for costs and fees, with documentation establishing the reasonableness of the rates and hours sought, within 30 days of this Order. Because the Court has resolved Autodesk's motion without need for oral argument, the motion hearing scheduled for February 3, 2011, is hereby VACATED.

In accordance with the above determinations, the Court hereby orders as follows:

1. Defendants shall pay Autodesk statutory damages in the amount of $82,500.

15

Case No.: 10-CV-01917-LHK
ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT

1    2. Post-judgment interest shall accrue from the date of judgment as provided by 28 U.S.C.
2       1961(a).
3    3. A permanent injunction hereby issues enjoining and restraining Defendants, and each of
4       them, and their respective agents, servants, employees, successors, and assigns, and all
5       other persons acting in concert or conspiracy with Defendants or affiliated with Defendants,
6       from:
7           a.    copying, reproducing, distributing, or using any unauthorized copies of
8       Autodesk's copyrighted software products;
9           b.    otherwise infringing any of Autodesk's copyrights;
10          c.    manufacturing, importing, offering to the public, providing, or otherwise
11      trafficking in any technologies, products, services, devices, components, or parts thereof
12      primarily designed to or produced for the purpose of circumventing either a technological
13      measure that effectively controls access to one or more of Autodesk's software products or
14      a protection afforded by such a technological measure (collectively, "Circumvention
15      Technology");
16          d.    copying, reproducing, advertising, offering for sale, or distributing any
17      goods or services in connection with the unauthorized use of any of Autodesk's trademarks
18      or any other marks confusingly similar thereto;
19          e.    using in any manner any of Autodesk's trademarks, any marks confusingly
20      similar thereto, or reproductions, counterfeits, copies, or colorable imitations thereof in
21      connection with any of Defendants' goods or services in such a manner that is likely to
22      create the erroneous belief that said goods or services are authorized by, sponsored by,
23      licensed by, or are in some way associated with Autodesk; and
24          f.    otherwise infringing any of Autodesk's trademarks.
25   4. Pursuant to 17 U.S.C. § 503(b), 17 U.S.C. § 1203 (b)(6), and 15 U.S.C. § 1118, Defendants
26      are further ordered to immediately destroy:
27          a.    any and all infringing copies of Autodesk's software products;
28          b.    any device or product involved in Defendants' manufacture, importation,

offering to the public, provision, or otherwise trafficking in any Circumvention Technology; and

      c.     all labels, signs, prints, packages, wrappers, receptacles, and advertisements bearing any of Autodesk's registered trademarks without authorization; any materials containing false designations of origin, false descriptions, or misrepresentations of fact concerning Autodesk's software products or any services or products of Defendants; any materials bearing any reproduction, counterfeit, copy, or colorable imitation of Autodesk's registered trademarks; and all plates, molds, matrices, and other means of making the same.

**IT IS SO ORDERED.**

Dated: January 31, 2011

_____
LUCY H. KOH
United States District Judge

Case No.: 10-CV-01917-LHK
ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT